1 0 8 3 6 6 6 R & D Thiel v. Robledo Council, you may proceed. Thank you. Good morning, Your Honors and Council. I'm Julie Garrison. I'm here on behalf of the appellant, R & D Thiel. I think the first order of business is that I should acknowledge that since the briefs were prepared in this case, this Court, less than a month ago, issued a decision that addresses the, I guess it's kind of a sub-issue of the manifest weight inquiry, specifically whether to apply an extra degree of scrutiny where Commission has rejected the arbitrator's findings, particularly on credibility, and has reversed an arbitration decision. In that case, as you know, you declined to apply such extra scrutiny in that, under those facts. I guess my reading of that is that it's not entirely rejected. It's sort of the status quo, what it was. The language in the S&H decision, as well as, I guess, the controversial Cook decision is that there should be some, you know, there's some concern that there should be some deference, some credence to that argument. And, you know, I think we've seen parties on both sides raise this issue, and the Court kind of acknowledged that concern. Counsel, let me ask you a question related to that. Yes. I think the concern is when the Commission gives no reasons for contrary credibility determinations, obviously the decision lacks findings which make a meaningful judiciary review possible. However, in this case, didn't the Commission give reasons for making credibility findings contrary to those made by the arbitrator? Well, the Commission did give some, did give its reasons. I mean, they set forth findings of fact. I mean, they went through the facts. They laid out the facts. And then they said, well, you know, here's Dr. Mercier. Well, we look at this differently. Well, why do they look at this differently? You look at the reasons that they gave. They claim that Dr. Mercier had made concessions in his testimony, and that's just not so. I've set forth, I think pretty clearly, particularly on page 27 of my brief, regarding the back issue. It was clear that the lumbar MRI findings did not correlate with his physical examination findings, and he saw this gentleman within about three weeks, I guess, of the accident. He also, I mean, he looked at the MRI, did not find any nerve root or significant neural impingement. He also found that the petitioner's subjective findings were non-anatomical and showed signs of malingering. Now, I mean, if you look at the totality of Dr. Mercier's opinions, I think it's compelling that the Commission's specific, you know, almost cherry-picking of looking at, you know, a specific statement versus totality of his opinion, as well as the I guess there would be, but the cases where I've made this argument, I've seen this argument, the Commission has given reasons. But again, I think it has to be in the context of the totality of, I mean, looking at, considering all the evidence, not just, you know, a specific, you know, particular, you know, evidence.  cited last month. The facts included that the contemporaneous medical records lacked any reference to a work injury, that there was lack of treatment for a period of weeks. And this is despite the claimant having had several opportunities to report an injury to seek treatment. There the arbitrator had found that he testified credibly, but citing those facts, the Commission said he was not credible. His testimony was not credible. And obviously the claimant argued that the arbitrator's credibility determination should be given some deference. But, you know, ultimately the Commission found that consideration of all the facts and circumstances demonstrated that that claimant had failed to prove the threshold accident compensability. And then ultimately this Court determined that those same facts constituted the manifest weight of the evidence in that case. And I would contend that there are similar facts in this case that constitute the manifest weight of this evidence and serve as the basis for denial of a claim. You know, the knee, there's really two parts. There's a knee condition and there's a back condition. And with the knee it's particularly compelling because there we see delayed complaints, delayed reporting to his own treating doctors for a period of weeks. And this is despite this gentleman going to see his chosen chiropractor six times between the date of the accident and January 20th when he finally did say, well, there's a problem with my knee. And each time he went in and he completed, it's in the record, a pain diagram, you know, for his chiropractor. There's nothing regarding the knee. Again, he saw Dr. Mercier the end of January, January 27th, said he had no complaints regarding his knee. Dr. Mercier did examine his lower extremities as part of his examination. He found nothing normal. And Dr. Mercier did explain that, you know, what he's complaining of is an anterior knee problem, whereas possibly with the back he might have had some radiation, he might have had a posterior problem, but that's not what he was complaining of. So it wasn't consistent with the mechanism of the injury or his complaints. And, you know, then when Dr. Mercier sees him again in May of 04, he says, well, given the absence of any pain complaints in January of 04 and I had no positive knee findings then, you know, this is clearly doesn't appear related to the work accident back in January, beginning of January. And that's clearly his opinion. What about Cavazos and Montella? Do they not say that both the claimant's knee and low back injuries were causally related to the work accident? Well, Dr. Cavazos, regarding the knee, he said that the MRI findings were a questionable fracture. He deferred to Dr. Friedberg. Dr. Friedberg was not deposed. He has the reports in the record from his four visits. And here the commission made an assumption that he had reviewed the knee MRI. I think it's clear from his reports he reviewed the lumbar MRI, but not the knee MRI. And he may have taken some x-rays, but he doesn't state what those x-rays were of. And so his diagnosis of a fracture, which was not even made until the third visit, you know, is also questionable. I mean, here we're looking at the totality of the evidence regarding the knee, and Dr. Mercier has a more compelling supported decision. Regarding the back, well, you mentioned Dr. Montella. Now, his testimony is not even consistent with his own findings. He testified to frequent changes in diagnosis and opinions regarding ability to work, despite having unchanged, unchanging lack of objective findings. And he regularly deferred to the petitioner's own requests to be off work or to be released to work. I mean, it's interesting that at his initial, I think it was June 24th, 04 examination, so he's not seeing the petitioner for six months. He has no interest in the past treatment. He stated that he did not even care to review those prior records. So on that January, excuse me, June 24th date, he finds the petitioner's condition is severe and debilitating. And yet, miraculously, two weeks later, he releases the petitioner to unrestricted work. And I think, you know, he has little credibility, and that's what Arbitrator Kinnaman found in this case. Well, let's assume you're making a good point. You're arguing that Mercier's testimony is more compelling, it's more accurate. But you've got conflicting medical evidence. That's what it boils down to. So, as you know, it's within the province of the commission to determine the credibility of the witnesses, the medical evidence, and the weight to be given to the evidence. So with two doctors supporting the causal connection, why is it against the manifest weight of the evidence? Why is the opposite conclusion clearly apparent? Well, I think, excuse me, I think it's clearly apparent because you have to look at the underlying basis for those opinions. And Dr. Pavazos doesn't support it. Dr. Montella's ultimate opinion doesn't support it. Dr. Mercier, he has the opportunity to look at everything. You know, he sees this gentleman within three weeks of the accident. He sees him again. And then you go to Dr. Ghanayem, who, again, he reviews all the prior treatment. He looks at the mechanism of injury. He looks at the complaints, both initial and ongoing. He looks at the treatment. And he looks at the findings, particularly the MRI, the January, I think it was January 9th MRI on the low back. And he says, well, this low back dyspathology and need for treatment is not related back to that injury. You look at that, and it's age-related. It's degenerative. You know, it's incidental findings. And what does he cite? He cites the MRI findings himself. He cites Dr. Friedberg's findings from Dr. Friedberg's records. He cites Dr. Montella's findings. I mean, these are all laid out in my brief and in the various decisions. And he says, well, based on this, it would have been appropriate to treat him maybe for a month. You know, he says 12 chiropractic visits. You know, you're seeing his chiropractor at that time. He says if he's improving, then maybe another month. So he's talking about 24 visits. Yet this gentleman has 140 visits over two years. And this is a frequent theme. Let me ask you this. Do you have any law that supports the argument that in making a credibility determination, the commission should weigh certain features about the doctor's testimony, whether they're treating or not, how many times they've examined the claimant, whether they simply looked at records? Do you have any law that says they should give greater or lesser credibility depending upon those factors? Do you have that? You know, I have to say that the only case I have seen that actually specifically states that kind of, you know, criteria for weighing is a commission decision. And I think it's within the past year I've seen it. Well, that wouldn't be precedential. Right, it's not precedential. But honestly, that's the only case I've seen where they've said, look, you know, when you weigh these two opinions and you look at, you know, this doctor, you have to say, well, what is it based on? I think in that case it was actually a causation inquiry into probably a repetitive trauma case, as I recall it, that they were looking at, you know, does the doctor, is he fully informed as to what the demands of that job were? That's the only case that I, you know, I have seen. Although I would, you know, I've discussed them in my brief. I mean, I think that there are, there's language found in both the Cook decision and the Chicago Messenger case, which this Court authored and I cited in my brief, that helped to define, refine what we're talking about with manifest way of the evidence. And what I took from those cases is that the Court must come up with a sensible conclusion and its findings should not defy logic. And I think under both those criteria, the Commission's decision is correct in this case. And, you know, lastly, I would just say that, you know, I think this is a case where in finding that the Commission's decision is against the manifest way of the evidence, the arbitrator's decision could be reinstated. Thank you. Thank you, Counsel. Good morning, Your Honors. Richard Victor for Mr. Obrado and good morning, Counsel. Your Honors, the way I see this is a classic manifest way to the evidence case. It's clearly up to the Commission to decide who to believe and what to believe in terms of conflicting evidence. There is no case out there that I know of that parses out portions of medical testimony in saying that there isn't credible evidence in the record to support a decision. Here there is credible evidence in the record. You have the testimony of Dr. Cavazos and Dr. Montella. You have the opinions that in regard to the knee, that a two-week period of time is not unreasonable for a specific knee complaint to surface given the mechanism of the injury the Petitioner suffered here, the injured worker suffered here. You have Cavazos' testimony that the severe nature of the low back pain in sciatica certainly masked his knee injury. You have objective medical findings pursuant to MRI just a few days after the accident and the knee MRI. You have Mercier saying that for the MRI findings, a person with such findings, epidurals would be appropriate. You have Mercier saying that given a person's symptomatology, this person's symptomatology with regard to the knee and the MRI findings, the scope would be reasonable. All this shows that there is credible evidence in the record to support the decision. Is the line ever drawn on that? You know, counsel makes an argument that I think has some superficial appeal from a logical sense. You've got a case where you have a couple physicians who have treated the claimant over a period of years, have interviewed the claimant, have dealt with the claimant, and then somebody gets a referral years later and looks at some records and says, I believe this. So there are no restrictions on that at all in making credibility determination? Well, Your Honor, but that's not the case here. Here we have treatment immediately after the accident with Dr. Gavazos, Dr. Friedberg. Well, she's saying it is. But giving her argument all due respect, what's your reaction to that? Are there any restrictions ever? Well, certainly if there's a situation where you have treating physicians and then you have a gap in time and then another treating physician after that, and a decision may rely on that subsequent treating opinion, then certainly I would think that there could be a good argument made that the opinion of that later treater after a gap in period of time may not be credible, or even based on the evidence as a whole. My point being that that's not the situation at all here. While Montella comes on the scene a few months later, you have consistent treatment before that, both with Dr. Gavazos and with Dr. Friedberg. And Friedberg's treatment recommendations mirror Dr. Montella's with regard to the NAPE. What exactly did Friedberg, what was his conclusion? His conclusion was an osteochondral fracture, possible meniscal tear, and that the man should have an arthroscopy. Did he give any opinion on causal connection? No, he didn't. He just was, did not offer one. We didn't take his testimony, so that question was never asked. So his records and his findings go in in terms of the pure objective medical evidence, devoid of any causational opinion. So you're saying this is a case of conflicting medical evidence, it's a battle of the witnesses, the credibility. It's within the province of the commission. Absolutely. Is that what it boils down to? In the end, that's correct. There is credible evidence in the record to support the decision. Obviously, it's not the place of a reviewing court to put themselves in the stead of the commission. There's nothing out there that's, in terms of case law, that says that just because another inference can be drawn, that if there are reasonable inferences from the record to support the decision, that that's not against the manifest, that that's against the manifest way to the evidence. It's all consistent, is what I'm saying. Could someone else have made a different decision? Sure. But it's up to the commission to do this, and they did it. And there is evidence in the record to support it. Lastly, and I'm going to touch very lightly on it, is the extra scrutiny argument. The counsel talks about a recent case, but that seems to be an issue of accident. Here we have no issue of accident. Here we have a case that the commission cited some specific reasons for their opinions. Someone else may disagree with them, cite other evidence. All well and good, but the commission's entitled to draw the inferences they wish from the evidence, and as long as there's credible evidence to support it, then it's not against the manifest way. And in that circumstance, where there are specific reasons, and there is evidence to support it, to say that, therefore, somehow the decision of the arbitrator should be given some extra degree of scrutiny because she had made an initial determination as to credibility different from the commission, would, I feel, in effect, be robbing an injured worker of a substantive right to an impartial consideration on review. And that is certainly not the intent of the Act, which is to compensate injured workers for compensable injuries and to give injured workers the right to a review by an impartial body here in the commission in the decision of the arbitrator. Now, Mercyhurst's opinion that there was no causal relationship between the work injury and the knee, the work accident and the knee injury, was based very heavily on the fact that there were no reports of the injury until January 27th, I think was the earliest date. The accident took place on, what, the 5th? So we've got, you know, that period of time. But didn't Gavazos report in his records of January 20th that the claimant had a potential knee problem, which had been masked by the low back pain? Is that not in the record? Precisely, Your Honor. So we've got a 15-day, we've got 15 days before any knee involvement appears in a medical record, but we have a doctor explaining why the 15 days is there. Correct. And that's my point, that there is medical evidence, Gavazos and then Montella, saying that a two-week period of time, given the severe fall, the severe low back pain, the sciatica, is not unreasonable for a specific knee problem to surface in terms of a documented complaint in the records. Thank you. Counsel, you may reply. I just have a few comments. Regarding the knee, I think that it's incorrect to state that Dr. Friedberg and Dr. Montella were in agreement. They were not in agreement. Dr. Montella had ruled out a minuscule tear. The fracture or the osteochondral fragment suspected injury, Dr. Friedberg, excuse me, Dr. Montella, I think said was, excuse me, Dr., I think that was Dr. Gavazos treating. He said that was questionable. He deferred to Friedberg. And Friedberg, his, ultimately his diagnosis of that is also, excuse me, questionable. And the only other thing I would, I would want, I just want to point out is, and I cited it on page 22 of my original brief, and that's the appellate court's statement in the Cook case. And they said that the decision of the commission must be founded on a sensible conclusion. And it is not the test to simply state that there's a question of fact and the commission's findings will stand. That finding of fact must be against the manifest way to the evidence. I think that's the crux of, you know, our inquiry here and our problem with this commission decision. Thank you. Thank you, counsel. This matter will be taken under advisement.